The trial court divorced the parties on December 3, 1984; two children had been born of the marriage. On April 1, 1992, the court awarded custody of the children to the father and ordered the mother to pay $431.75 per month in child support. On October 1, 1997, the father petitioned the court to modify the child-support obligation and for a rule nisi, alleging that the older child had become independent and self-supporting and that the mother had failed to pay the court-ordered child support, but rather, had unilaterally paid a lesser amount. On November 13, 1997, the mother answered and counterclaimed, alleging that the older child had been residing with her since January 1997, at the father's request, and that she had been supporting that child since that time. The mother sought an equitable credit for the support that she had provided to the older child since January 1997, custody of that child, child support, and post-minority support for the child's college education.[1]
Following an ore tenus proceeding, the court, on July 29, 1998, entered the following judgment:
 "1) That each party has had custody or been primarily responsible for the support of one child from February 1997 to April 1998, and the incomes of [the *Page 641 
parties are] substantially the same; therefore, after giving equitable credit to each party, the Court finds that no child support is due for that period; and "2) That the appropriate current child support due from [the mother] to [the father] is $400 per month; and "3) That each party shall pay one-half (1/2) of the reasonable and necessary college expenses of the children, so long as they maintain at least a `C' average."
The father appeals.
We first address the father's contention that the court failed to comply with Rule 32, Ala. R. Jud. Admin. Application of the Rule 32 child-support guidelines is mandatory in child-support actions filed on or after October 9, 1989. State ex rel. Dep't ofHuman Resources v. Hogg, 689 So.2d 131 (Ala.Civ.App. 1996). In Martin v. Martin, 637 So.2d 901, 902 (Ala.Civ.App. 1994), this court issued the following directive:
 "We hold, therefore, that the word `shall' in Rule 32(E), Ala. R. Jud. Admin., mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form. . . . We further hold that stipulated cases, i.e., where the parties have agreed upon a child support amount in compliance with the guidelines, are the only exceptions to the requirement of filing a child support guideline form and income affidavit forms."
Compliance with Rule 32(E) is mandatory, even though the trial court found that application of the guidelines would be unjust or inequitable. Id. When the court determines that application of the guidelines would be manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. Hogg, supra. When Rule 32(E) has not been complied with and child support is made an issue on appeal, this court may reverse the judgment of the trial court and remand the case for further proceedings in compliance with Rule 32, Ala. R. Jud. Admin. Id.
The record indicates that both parties completed and filed a Form CS-41 "Child Support Obligation Income Statement/Affidavit" with the court. However, the record does not contain a properly completed Form CS-42 "Child Support Guidelines Form" for either party. Further, the trial court did not complete a CS-42 Child Support Guidelines Form. The father presented evidence indicating that the present support obligation for one child is "essentially the same" as the support obligation set by the court in April 1992 for two children. Additionally, the father testified that, based on his attorney's calculations, the mother's support obligation would be in "excess of $400." The mother presented evidence indicating that, based on "rough calculations" of her attorney, the support obligation for one child would be $400 per month. We conclude that Rule 32(E) has not been complied with. This court cannot discern how the trial court determined the support obligation of $400 per month in this case. That portion of the judgment regarding the mother's current child-support obligation is reversed and the case is remanded for the trial court to file a completed and signed CS-42 Child Support Guidelines Form indicating the proper support obligation. SeeState ex rel. Dunnavant v. Dunnavant, 668 So.2d 851
(Ala.Civ.App. 1995). If the court determines that application of the guidelines is manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, it must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin.Hogg, supra.
The father next argues that the court erred in granting the mother an equitable credit for the child-support arrearage. Pursuant to the court's April 1992 order, the mother was obligated to pay $431.75 per month in child support to the father *Page 642 
for the parties' two children. In February 1997, the older child had, "on weekends and some nights," begun living with a friend. The father asked the child on April 2, 1997, to completely vacate the father's residence. The child moved in with the mother that same month. The child maintained part-time employment while living with the mother. The child turned 19 years old in March 1998 and began his post-secondary education in April 1998.
The mother had satisfied her entire support obligation through February 1997. The mother testified that because the older child was no longer living with the father on a regular basis, she unilaterally began paying a "prorated" amount of support in March 1997. The mother paid only $220 in child support in March 1997 and $150 in child support in April 1997. The mother stated that she unilaterally ceased making any support payments after April 1997 because the older child was living with her. After the older child turned 19, in March 1998, the mother began paying the father $400 per month as child support for the parties' younger child. This amount was based on the mother's attorney's "rough calculations" of what the guidelines mandated for one child. The father received payments of $400 from the mother in April, May, and June 1998.
It is well settled that child-support obligations become final judgments on the date due and that it is beyond the trial court's power to forgive an accrued arrearage. State ex rel.McDaniel v. Miller, 659 So.2d 640 (Ala.Civ.App. 1995). The award or denial of a credit against an arrearage is within the sound discretion of the trial court and will not be reversed absent a showing of plain and palpable abuse. Brewer v. Brewer,613 So.2d 1292 (Ala.Civ.App. 1992). When the trial court receives ore tenus evidence, a presumption of correctness attaches to its determination of factual issues, and that determination will not be disturbed on appeal unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. Id. A party may not reduce child-support payments without the consent of the court.Phillippi v. State ex rel. Burke, 589 So.2d 1303 (Ala.Civ.App. 1991). Further, a party seeking credits against a child-support arrearage must present proof pertaining to the monetary amount of the credits sought. Id.
The mother made partial payments of $220 in March 1997 and $150 in April 1997, totalling $370. She unilaterally ceased making support payments after April 1997, until she resumed making payments of $400 per month in April 1998. The amount of child support the mother was obligated to pay from March 1997 through March 1998 was $5,181 (12 x $431.75 = $5,181). Thus, the arrearage owed for that period was $4,811 ($5,181 — $370 = $4,811).
The mother's unilateral decision to pay a prorated amount of support and to cease paying any support altogether after April 1997 was contrary to the law of this state. The amount of the arrearage owed became a final judgment, which the court could not forgive; however, the court could award the mother credits against that arrearage upon proof of the monetary amount of the credits sought. The mother testified that in February 1997 she paid directly to the older child "at least a hundred dollars and sometimes more." The mother testified that that child attended two night classes in order get "caught up" on some of his high school credits and that she had paid $160 per session. The mother said that she again had contributed money to that child in March 1997. She also testified that after that child had come to live with her in April 1997 she provided "all of his support." Finally, the mother testified that during this period she had spent approximately $600 on clothing, "field trips," and other "numerous things" for the younger child. *Page 643 
The only proof offered of the amount of credits sought by the mother was the evidence that she had paid $100 to the older child in February 1997, that she had paid certain amounts for his night classes, and that she had paid $600 on behalf of the younger child. Thus, these amounts are the only credits the mother was entitled to. The testimony indicating that the mother provided "all of [the older child's] support" after April 1997 is insufficient proof to allow the mother credits against the arrearage. The mother offered no evidence of the amount of such support and the fact that the child had resided with her is insufficient. We note that the child was employed and may have been self-supporting. Wood v. Wood, 434 So.2d 800
(Ala.Civ.App. 1983); Weaver v. Weaver, 401 So.2d 77 (Ala.Civ.App.),cert. denied, 401 So.2d 78 (Ala. 1981). That portion of the judgment regarding child-support arrearage is reversed and the case is remanded for further proceedings.
The father next contends that the court erred in issuing its post-minority support order because, he says, the order is without reasonable limitation and creates the possibility of undue hardship.[2] The father testified that he is willing to pay one-half of the older child's college tuition. The court's award of post-minority support is not an issue on appeal, but whether the order as written could cause an undue hardship on the father is. This court has previously held that "the trial court must set reasonable limitations on the parent's responsibility for post-minority education support; failure to do so may impose an undue hardship on the paying parent." Bahri v. Bahri, 678 So.2d 1179,1181 (Ala.Civ.App. 1996). "These limitations include (1) limiting the support to a reasonable time period, (2) requiring the child to maintain at least a `C' average, and (3) requiring the child to be enrolled as a full-time student." Id., at 1181. This court has also held that a reasonable limitation would include limiting the expenses to be paid by a parent to a particular college or institution. See Baggett v. Foster,622 So.2d 350 (Ala.Civ.App. 1992); Eastis v. Bredehoft, 599 So.2d 53
(Ala.Civ.App. 1992). Although the trial court's order requires the child to maintain a "C" average, it does not limit the support to a reasonable time period or require the child to maintain full-time status. Further, this court has held that "in cases involving post-minority support for college education where the child is already attending college, the decision rendered by the trial court will be retroactive to the time of the filing of the request." Bayliss v. Bayliss, 575 So.2d 1117, 1122
(Ala.Civ.App. 1990). At the time of the judgment, the child was already attending college and the mother had paid $1,000 in tuition; therefore, the award of the post-minority support should be made retroactive to the filing of the request for post-minority support. Accordingly, on remand the trial court is directed to enter an order setting more reasonable limitations on the post-minority support award and to order that the award be retroactive to the date of the filing of the request.
The mother's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
Robertson, P.J., and Monroe and Thompson, JJ., concur.
Crawley, J., concurs in part and dissents in part.
[1] The older child was 18 years old at the time the petition was filed; he turned 19 years old on March 15, 1998. The other child was 15 years old at the time of the final hearing.
[2] That portion of the court's order concerning post-minority support refers to "children" rather than "child." We assume this to be a typographical error on the part of the court because no petition for post-minority support for the younger child was before the court.