YATES, Judge.
On May 21,1998, K.H.L., the mother, on behalf of her minor child, filed a complaint against the alleged father, K.G.M., seeking an adjudication of paternity and an award of child support and health insurance for the child. On June 26, 1998, K.G.M. denied paternity and requested a blood test; a DNA test was performed, and it established that KG.M. was the father. The mother amended her complaint, seeking retroactive child support and reimbursement for all medical expenses related to her pregnancy. The parties entered into a .pendente lite agreement on February 3, 1999, which the court ratified, awarding the mother sole custody of the child, with specified visitation privileges to the father.
Following ore tenus proceedings on October 29,1999, and December 14, 1999, the trial judge stated in open court:
“I’m going to rule on this right now. This is a case that was no doubt right to be brought in this Court. [The father] was paying some child support, but according to [the mother] it wasn’t what she thought was enough. [The father] wanted to visit with his child and allegedly he wasn’t able to visit with the child enough or that wasn’t allowed. He wasn’t satisfied.
“I think what — do we already have an admission of paternity and an order establishing paternity?
*806 “So, we’re beyond that. We’re down to how much child support would be the right amount of child support. Well, the guidelines don’t help us here. It doesn’t even say to my knowledge how I’m supposed to come up with what is right. I’m just supposed to try to figure out what would be a good amount for the best interest of the child. And I came up with a number. Nobody is going to be a happy camper. That’s going to be the unfortunate situation about whatever I say here today. Nobody is going to be extremely happy.
“And the amount of child support will be nine hundred forty-seven dollars [$947] per month. The issue of bonus money, you know, I could say I already factored that in. I don’t know if I did or not. But I don’t know if he’ll get another bonus. I don’t know if he’s getting any of that three hundred fifty — seven hundred thousand dollars that’s out there. But I’m saying this, if he does get any of that, then he’s being ordered to take ten percent of his gross amount that he gets and he’s to set up an annuity for the benefit of his child.
“And let’s see, name change, bonus, annuity, child support. Back child support, I’m going to say no. The reason I’m just saying no, not that I owe y’all an explanation, child support was given. Nobody was happy with it, but it was given. But from this day forward, it will be nine hundred and forty-seven dollars a month.”
The court entered a written order on December 23, 1999, restating its rulings as to child custody, visitation, child support, and an attorney fee. The father filed a post-judgment motion on December 15, 1999; the court, on January 21, 2000, amended its order, allowing each parent to claim the child as a dependent for income tax purposes in alternating years.
The mother appealed, asserting that the trial court had erred by failing to properly calculate the amount of child support pursuant to Rule 32, Ala. R. Jud. Admin., Child Support Guidelines. Specifically, she argued that the court had (1) failed to consider the father’s capital gains and bonus income, (2) failed to include a completed CS-42 child-support form, (3) failed to award an increased amount of child support based on awarding the father the tax dependency exemption, (4) failed to award retroactive child support, and (5) failed to order the father to provide a life-insurance policy on his life, naming the child as beneficiary.
A detailed recitation of the facts is unnecessary. The parties lived together from 1993 to 1997; the child was born on March 27, 1998. The father testified that he earned $115,000 in 1997 and $96,000 in 1998. He stated that his current monthly income was $7,500, which he listed on his CS-41 income-affidavit form; however, he stated that he also received disbursements/ capital gains of $228,086 and $201,913 from the sale of his medical supply company in 1999 and a $20,000 bonus from his previous company. He stated that he had voluntarily paid the mother $500 per month in child support since the child’s birth and that he had begun paying $900 per month in January 1999. The mother testified that she was employed as a realtor, earning approximately $5,240 per month. She listed on her CS-41 income affidavit expenses of $760 for child care and $420 for health-insurance premiums; she admitted she receives $795 per month in rental income.
As to the issue of child support, this court has consistently held that the application of the Rule 32 “Child-Support Guidelines” is mandatory in child-support *807 actions filed on or after October 9, 1989. State ex rel. Department of Human Resources v. Hogg, 689 So.2d 131 (Ala.Civ. App.1996). Although the record contains a completed Form CS-41 “Child Support Income Affidavit” for both parents, it does not contain a Form CS-42 “Child Support Guidelines Form” for either party, and the court did not complete a CS-42 form. In Martin v. Martin, 637 So.2d 901, 902 (Ala. Civ.App.1994), this court issued the following directive:
“We hold, therefore, that the word ‘shall’ in Rule 32(E), Ala. R. Jud. Admin., mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form.”
See also Ullrich v. Ullrich, 736 So.2d 639, 641 (Ala.Civ.App.1999). The parties’ combined income exceeds the amount listed in the “Schedule of Basic Child Support Guidelines”. Rule 32(C)(1) states that the “court may use its discretion in determining child support in circumstances where combined adjusted gross income is below the lowermost levels or exceeds the uppermost levels of the schedule.” However, this court cannot discern how the trial court determined the support obligation of $947 per month; therefore, that portion of the judgment is reversed and the case is remanded for the trial court to file a completed and signed CS^2 Child Support Guidelines Form indicating the proper support obligation. See State ex rel. Dunnavant v. Dunnavant, 668 So.2d 851 (Ala. Civ.App.1995). Further, the Child Support Guidelines specify that all gross income must be included in a child-support calculation “from any source ... and includes, but is not limited to, salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trusts, annuities, [and] capital gains.” Rule 32(B), Ala. R. Jud. Admin. By the court’s own admission, it is unsure whether it factored in the additional moneys received by the father. We instruct the court to include all of the parties’ income in its calculation. Rule 32(B)(2); see also Bushnell v. Bushnell, 713 So.2d 962 (Ala.Civ.App.1997).
As to the issue of life insurance, the father stated that he would agree to naming the child as the beneficiary on his life-insurance policy. Therefore, we instruct the court to include in its order a provision ordering the father to maintain a life-insurance policy on his life, naming the child as the beneficiary. See, Jordan v. Jordan, 688 So.2d 839 (Ala.Civ.App.1997).
This court has consistently held that the allocation of the dependency exemption is a matter within the discretion of the trial court. Flanagan v. Flanagan, 656 So.2d 1228 (Ala.Civ.App.1995). However, the Comment to Rule 32, under the heading “Tax Exemptions” states, “The Schedule of Basic Child Support Obligations assumes that the custodial parent will take the federal and state income tax exemptions for the children in his or her custody.” Therefore, we instruct the court to enter a statement explaining its deviation from the guideline in awarding the father the tax-dependency exemption in alternating years. Flanagan, supra.
Last, in regard to the issue of retroactive child support, we note that this court stated in Brown v. Brown, 719 So.2d 228, 232 (Ala.Civ.App.1998), “[T]he Alabama legislature recognized the parent’s duty to support a child and created a cause of action for retroactive support. See §§ 30-3-110 et seq., Ala.Code 1975.” However, it is within the discretion of the trial court to award retroactive support back to the filing of the complaint. As noted by the trial court, the father had voluntarily paid the mother $500 per month since the child’s birth and $900 per month since January 1999. We, therefore, *808 conclude that the court did not err in failing to award retroactive support.
Insofar as the judgment denied the mother’s claim for retroactive child support, the judgment is affirmed. Insofar as it denied the mother’s request to have the child named as a beneficiary on the life-insurance policy, the judgment is reversed. The award of child support is also reversed.
The mother’s request for an attorney fee on appeal is granted in the amount of $1,000.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ„ concur.