This appeal questions whether the trial court erred in incorporating two agreements for the division of property into a final judgment of divorce. One party classifies the documents regarding the property and financial division of the parties as "settlement agreements." The other party attempts to distinguish those documents, classifying them, instead, as documents to settle a pending lawsuit. We will simply refer to them hereinafter as "settlement agreements."
Esther Y. Morrison (hereinafter "the wife") and Kenneth R. Morrison (hereinafter "the husband") were married in 1971 and separated on or about February 28, 1999, after a 28-year marriage. The wife testified that after the parties had separated, she and the husband prepared two separate lists; those lists included, in part, a division of property and payments to be made by the husband during their separation. She stated that she typed the handwritten documents and that the parties signed them on August 4, 1999. These documents were not prepared by an attorney, although the wife stated that she was being represented by an attorney in the divorce proceeding.
In one of these documents entitled "Esther's — Property and Financial Settlement," and signed by both the wife and the husband, the following provisions were made:
 "35. [The husband] will pay [the wife] $500.00 per month from 9/1/99 through 8/1/2000.
 "36. [The husband] will pay [the wife]'s health insurance for 1 year after divorce is granted unless she gets job related insurance which occurs earlier.
 "37. [The husband] will pay Liberty National cancer policy during [the] separation period.
". . . .
 "39. [The husband] will pay premiums on [the wife]'s life insurance through [the] separation period.
". . . .
 "42. [The husband] will pay $500.00 per month child support until [the minor child] reaches 19 [years of age] or starts college, [whichever] comes first, plus $25.00 per week spending money." *Page 842 
(Defendant's exhibit 3.) In addition to the preceding provisions, the settlement agreements included provisions giving the wife a house valued at $150,000,[1] furniture, collectible items, holiday decorations, her diamond jewelry collection, and an automobile. (Defendant's exhibit 3.) Provisions in the other document awarded the husband the couple's $450,000 home (which had an equity of $300,000); furniture; checking, money and financial accounts worth approximately $250,000; his baseball-card collection; his collection of seven numbered Daniel Moore athletic prints and other athletic-themed prints; and his collection of elephant figurines appropriately referred to as "The Herd." (Defendant's exhibit 2.)
The record also indicates that according to the Child Support Obligation Income Statement/Affidavit (Form CS-41), the husband earned an average monthly salary of $6,185.55 during his last four years of employment. However, the wife testified at a hearing that at the time the parties entered into the settlement agreements, the husband was not employed, and she did not know when he was last employed. The record also indicates that according to the wife's Form CS-41, she earned an average monthly salary of $416 for six months in 1999. She testified at the hearing that she was employed when she signed the settlement agreements, but she explained that since that time she has undergone neck surgery and, as of the time of trial, was employed only part-time doing domestic work at a rate of approximately $50 per week. The wife stated that as of the time of trial she suffered from pain and numbness in her arm, fingers, and leg, and that she remained under the care of a physician.
The record contains a draft of a "legal separation agreement" prepared on August 27, 1999, by the wife's attorney. That document included a provision that stated:
 "4. [The husband] shall pay to the [wife] as support and maintenance or in the event a divorce is granted, [periodic] alimony in the amount of $500 per month beginning on September 1, 1999, and payable on the first day of each month thereafter until the [wife] remarries, dies, or the [husband] dies. Said [periodic] alimony to continue through August 1, 2000, and thereafter the sum of $____________ per month as support and maintenance or periodical alimony in the event a [judgment] of divorce is granted until the [wife] remarries, dies, or the [husband] dies. Said alimony shall not constitute income to the [wife] nor a deduction to the [husband] for income tax purposes."
A subsequent "agreement" prepared by the wife's attorney in March 2000 contained a provision that the wife would receive periodic alimony in the amount of "$1,000 per month beginning on the first day of the month after the granting of the final decree in this cause" and one-half of the husband's retirement and investment accounts.
The husband testified that he went to the attorney's office to discuss the agreement and that his notations are contained on the agreement. Based on these subsequent drafts prepared after August 4, 1999, and the discovery and negotiations that continued during the pendency of the case, this court concludes that the August 4 settlement agreements were not intended to constitute a final settlement regarding all terms of the divorce. We further conclude that the trial court was not bound by these documents in awarding the wife *Page 843 
periodic alimony or in fashioning a more equitable property settlement. We must reverse the judgment and remand the case, for the trial court to enter an order consistent with the factors established in Willing v.Willing, 655 So.2d 1064 (Ala.Civ.App. 1995). See also Courtright v.Courtright, 757 So.2d 453 (Ala.Civ.App. 2000) (holding that an award of $500 per month periodic alimony to the wife and 80% of the parties' marital assets to the husband was not equitable).
Furthermore, the wife contends that the trial court erred in determining that either the settlement agreements or the final judgment of divorce complies with the child-support guidelines. In Ullrich v.Ullrich, 736 So.2d 639 (Ala.Civ.App. 1999), the father argued that the trial court erred in ordering the mother to pay $400 per month in child support when, he alleged, the trial court did not comply with the mandates of Rule 32, Ala. R. Jud. Admin. In that case this court stated:
 "Application of the Rule 32 child-support guidelines is mandatory in child-support actions filed on or after October 9, 1989. State ex rel. Dep't of Human Resources v. Hogg, 689 So.2d 131 (Ala.Civ.App. 1996). In Martin v. Martin, 637 So.2d 901, 902 (Ala.Civ.App. 1994), this court issued the following directive:
 "`We hold, therefore, that the word "shall" in Rule 32(E), Ala. R. Jud. Admin., mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form. . . . We further hold that stipulated cases, i.e., where the parties have agreed upon a child support amount in compliance with the guidelines, are the only exceptions to the requirement of filing a child support guideline form and income affidavit forms.'
 "Compliance with Rule 32(E) is mandatory, even though the trial court found that application of the guidelines would be unjust or inequitable. Id. When the court determines that application of the guidelines would be manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. Hogg, supra. When Rule 32(E) has not been complied with and child support is made an issue on appeal, this court may reverse the judgment of the trial court and remand the case for further proceedings in compliance with Rule 32, Ala. R. Jud. Admin. Id.
 "The record indicates that both parties completed and filed a Form CS-41 `Child Support Obligation Income Statement/Affidavit' with the court. However, the record does not contain a properly completed Form CS-42 `Child Support Guidelines Form' for either party. Further, the trial court did not complete a CS-42 Child Support Guidelines Form. . . . We conclude that Rule 32(E) has not been complied with. This court cannot discern how the trial court determined the support obligation of $400 per month in this case. That portion of the judgment regarding the mother's current child-support obligation is reversed and the case is remanded for the trial court to file a completed and signed CS-42 Child Support Guidelines Form indicating the proper support obligation. See State ex rel. Dunnavant v. Dunnavant, 668 So.2d 851 (Ala.Civ.App. 1995). If the court determines that application of the guidelines is manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, it must make the findings *Page 844 
 required by Rule 32(A)(ii), Ala. R. Jud. Admin. Hogg, supra."
736 So.2d at 641.
In the instant case, both the husband and wife filed CS-41 forms that appear to comply with Rule 32(E). However, only the husband filed a CS-42, and that document does not comply with the child-support guidelines. That document states that it was prepared by the husband's attorney, but each column of information requested reads only "$0.00" or "XXXXXXXXXXXXX." A notation on the bottom of the form states that "[t]he [husband] shall continue to pay the [wife] $500/mo as per the agreement entered into by the parties on August 4, 1999. Also, the [husband]'s ability to earn income exceeds the uppermost monthly income of the guidelines." On the CS-43 form, styled "Child Support Guidelines Notice of Compliance," a box is marked, noting:
 "The child support guidelines, as set out in Rule 32, Alabama Rules of Judicial Administration, have not been followed and applied because of the following reasons:
 "`[The husband]'s ability to earn exceeds the uppermost monthly income of the guidelines. The [husband] shall continue to pay to the [wife] $500 per month as per the agreement entered into by the parties on August 4, 1999.'"
We note that there is a notation that appears on the CS-43, where the wife's signature normally would have appeared, that indicates that she refused to sign the document. Similar to the notations on the child-support forms, the final judgment of divorce states:
 "The [husband] shall pay to the [wife] the sum of Five Hundred and No/100 Dollars ($500.00) per month for the support and maintenance of the minor child of the parties. In addition, [the husband] will pay to the minor child of the parties, [K.M.], the sum of Twenty-five and No/100 Dollars ($25.00) per week for spending money. The parties acknowledge that Rule 32 of the Alabama Rules of Judicial Administration [does] not govern the amount of child support in this matter as the [husband's] ability to earn exceeds the uppermost monthly income of the guidelines."
Although we recognize that in certain cases the parties can stipulate the terms of child support, the present case does not appear to be one of those, because the amount allegedly agreed to by the parties in the August 4, 1999, settlement agreements does not appear to be in compliance with the guidelines. See Ullrich, supra, citing Martin. Specifically, the uppermost limit of monthly combined adjusted gross income listed in the appendix to Rule 32 is $10,000. The husband's CS-41 reflects that his average monthly income during the four years previous to trial was $6,185, for which he, on the basis of his income, alone, could be assessed a child-support obligation of $775 per month.[2] See Appendix to Rule 32 and Rule 32(C)(1). Given the discrepancy between the amount that should be owed under the child-support guidelines and the amount agreed to by the parties in their settlement agreements, we conclude that the trial court erred in determining that the parties' stipulation as to the amount of child support the husband would owe complies with the amounts set out in Rule 32. *Page 845 
Furthermore, even if the trial court intended to deviate from the guidelines, Rule 32(A)(ii) states that in such cases the trial court must make a written finding on the record that application of the guidelines would be unjust or inappropriate, and further requires that that determination must be based upon evidence presented in court and that the written findings must state the reasons application of the guidelines would be manifestly unjust or inequitable. See Rule 32(A)(ii); see alsoUllrich, supra, citing Martin. The notations made by the trial court and appearing on the CS-42 and CS-43 forms, as well as its brief finding of fact noted in the final judgment of divorce, do not demonstrate why the application of the guidelines would be manifestly unjust or inequitable as to the husband. Thus, those forms and statements are deficient and we must reverse the trial court's judgment and remand this case for proper compliance. See Ullrich, supra, citing Hogg.
Because we reverse the judgment and remand the case on these issues, we decline to entertain the other issues the wife raises on appeal.
The appellant's request for an attorney fee is granted in the amount of $750.
REVERSED AND REMANDED.
Yates, P.J., and Thompson and Murdock, JJ., concur.
Crawley, J., concurs in part and dissents in part.
[1] The wife's $150,000 home was fully paid for by a $150,000 mortgage taken out on the couple's $450,000 home, which was given to the husband in the settlement agreements.
[2] Of course, whether the proper child-support obligation is $775 or a different amount will depend on the earning capacities of the parties and the various factors outlined in Rule 32, Ala. R. Jud. Admin.