871 So.2d 827 (2002)
Clifton Mark CREEL
v.
Patricia Ann CREEL.
2010249.
Court of Civil Appeals of Alabama.
August 9, 2002.
Rehearing Denied September 27, 2002.
Certiorari Quashed August 29, 2003.
*828 Clifford W. Hardy, Jr., Bessemer, for appellant.
John C. Rockett, Bessemer, for appellee.
Alabama Supreme Court 1020140.
PITTMAN, Judge.
Clifton Mark Creel and Patricia Ann Creel divorced in 1996. The divorce judgment awarded the mother sole physical custody of the three children born of the *829 marriage. In 1999, the father filed a petition to modify custody, requesting sole physical custody of all three children. Following the presentation of ore tenus evidence, the trial court granted the father's petition in part, awarding the father sole physical custody of the two older children and allowing the mother to retain sole physical custody of the youngest child. The father filed a postjudgment motion. The trial court vacated the prior judgment, heard additional ore tenus evidence, and again awarded the father sole physical custody of the two older children and the mother sole physical custody of the youngest child. The father filed a postjudgment motion, which the trial court denied. The father appeals.
The father first argues that the trial court erred by not awarding him sole physical custody of the youngest child. The father argues that he satisfied the burden established by Ex parte McLendon, 455 So.2d 863 (Ala.1984), to modify a prior custody judgment. To satisfy the McLendon standard, the father must prove a material change of circumstances since the last custody judgment that materially promotes the children's best interests and welfare. Id. Furthermore, the benefits of the change in custody must outweigh the disruption caused by uprooting the children. Id.
The father argues that a change in custody of the youngest child from the mother to him would materially promote the child's best interests because, he argues, the mother's parenting skills have deteriorated to an almost dangerous level. The father presented evidence through his testimony, the testimony of neighbors, and the testimony of the older children indicating that the mother has dangerous mood swings, that she yells at the youngest child, and that she physically threatens the child and others. The father also presented evidence indicating that the mother has "wild" parties at her house involving excessive alcohol and sex.
The mother presented evidence, through her testimony, the testimony of other neighbors, and the testimony of friends that she is a conscientious and effective parent to the youngest child. The mother testified that she and the two older teenage children have difficult relationships. The mother presented evidence that contradicts the father's evidence of her allegedly "bad" and dangerous conduct. Therefore, based on the trial court's resolution of this conflicting evidence, we conclude that the trial court did not err by allowing the mother to retain custody of the youngest child.
The father next argues that the trial court erred by not finding the mother in contempt for her failure to have the former marital residence insured for a three-month period. It is completely within the trial court's discretion either to find or not to find a party in contempt. See Cavender v. State Mut. Ins. Co., 748 So.2d 863, 868 (Ala.1999); and Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994).
The original divorce judgment awarded the mother possession of the marital residence until certain contingencies occur (none of which have occurred). Upon the occurrence of the earliest contingency, the marital residence is to be sold and the proceeds of the sale divided evenly between the father and the mother. The divorce judgment ordered the mother to pay "the mortgage, insurance, and taxes on the home as they come due." It is undisputed that the mother allowed the homeowner's insurance on the marital residence to lapse for a three-month period; however, before the time of the trial, the mother had obtained coverage for the residence. Therefore, we conclude that the *830 trial court did not err by not finding the mother in contempt.
The father lastly argues that the trial court erred by awarding attorney fees to the mother. The judgment states:
"Based on the income of the parties and their present financial situations the [father] shall pay to the [mother's] attorney the sum of $1,500.00 for her attorney's fee, said sum not reflecting the true value of the services he rendered which would actually be in the range of some $4,425.00."
A trial court's judgment regarding attorney fees is presumed correct and will not be reversed on appeal unless the judgment is not supported by the evidence. Hewitt v. Hewitt, 285 Ala. 516, 234 So.2d 283 (1970). The trial court is given much discretion in determining an appropriate award of attorney fees because of its "own knowledge and experience as to the value of the legal services performed." Hammond v. Hammond, 500 So.2d 27, 29 (Ala. Civ.App.1986).
The evidence indicates that the mother's income is substantially less than the father's income. Also, the mother successfully defended the father's petition to modify custody of the youngest child, and as explained above, this court is affirming the trial court's judgment regarding the custody of the youngest child. Therefore, we conclude that the trial court's award of approximately one-third the value of the mother's attorney's legal services was not an abuse of discretion.
Therefore, we affirm the trial court's judgment.
The mother's request for attorney fees on appeal is denied.
AFFIRMED.
CRAWLEY, J., concurs.
THOMPSON, J., concurs in the result.
YATES, P.J., concurs in part and dissents in part.
YATES, Presiding Judge, concurring in part and dissenting in part.
I concur in the award of custody of the two teenagers to the father; however, I believe the father met the McLendon standard as to the five-year-old, as well.
Following an ore tenus hearing, and by stipulation of the parties, the court changed custody of the two teenage children to the father. They had previously left the mother's home, on their own, and moved in with their father. The trial court left sole custody of the five-year-old daughter with the mother.
Several witnesses presented disturbing evidence against the mother, the most compelling coming from the two older children of the parties. Both testified that the court should award custody of their younger sister to their father. The daughter, age 16, testified that her mother was a cocktail waitress, that she "was always out at night," that she drank alcohol to excess, and that she was quick-tempered and degrading toward the daughter and her siblings. The daughter stated that her mother "is always hollering. Sometimes it turns into physical ... [S]he is always shaking and hollering. Either she is frustrated from work ... or something somebody else has done."
She described one incident where her mother threw the younger child onto the bed because the child "didn't want to go to bed ... [then] she came in there hollering at me." She further testified as to occasions when her mother had not properly fed and cleaned the younger child and had sent her to bed without eating.
The daughter described instances where her mother would have male visitors in the *831 home, and in "the bed" while she and the younger child were present. She further testified that once she went into her mother's bedroom and saw "condoms all over the floor." The daughter testified to a change in her sister's personality since she and her brother left the mother's home and described her as appearing "confined," "depressed," and "afraid."
The son, age 15, testified that he was afraid of his mother, and that she was verbally abusive toward him and his sisters. He gave numerous examples of living in constant chaos with his mother, and he characterized her as unstable with profound mood swings. He further testified that his mother had severely spanked his little sister with a spatula for wetting the bed. As a result of this incident, the neighbors reported the mother to law enforcement.
The son testified that after his older sister had moved to the father's home, he had taken over as caregiver of his younger sister. He further stated that he had to wake his mother each morning so that he could be ready to catch the school bus on time, and that he "never ate breakfast." He went on to testify that since he went to live with his father, "I get to eat breakfast now ... dad drops me off at school every morning. I make it to school and go to class." He testified that his father was stable and consistent and that he expects him to pick up after himself and to make good grades. He stated that he and his older sister were now happy. Although he testified that his mother does not abuse his younger sister as badly as she had his older sister, he is still very concerned about her well-being.
After a thorough review of the record, I find that the father met the McLendon standard in this case, and that it would be in the best interests of these children not to be separated. It is well settled that "Alabama case law does not favor a custody judgment that separates siblings." Hannan v. Hannan, 676 So.2d 1340, 1342 (Ala.Civ.App.1996), citing Jensen v. Short, 494 So.2d 90 (Ala.Civ.App.1986).
It is understandable that the trial court wanted to give this mother "a chance" to raise her younger child successfully. However, the evidence indicates that in so doing, the trial court may have left the younger child in a volatile and hazardous environment, possibly jeopardizing her physical safety and emotional well-being.
I would reverse the trial court's judgment as to the younger child; therefore, I dissent on that point.