977 So.2d 482 (2007)
T.L.H.
v.
R.A.R.
No. 2050796.
Court of Civil Appeals of Alabama.
May 11, 2007.
Certiorari Denied July 13, 2007.
*484 Frederick A. Erben of Beddow, Erben & Bowen, P.A., Birmingham; and Clarence L. McDorman, Birmingham, for appellant.
*485 John D. McCord of McCord & Martin, Gadsden, for appellee.
Alabama Supreme Court 1061217.

On Applications for Rehearing
THOMPSON, Presiding Judge.
The opinion of March 2, 2007, is withdrawn, and the following is substituted therefor.
On July 25, 2005, R.A.R. filed a petition in the Etowah Juvenile Court (hereinafter "the trial court") alleging that he was the biological father of G.K.L. ("the child"), requesting that the trial court enter an order establishing his paternity of the child, and seeking a determination of his custodial rights to the child. In his petition, R.A.R. alleged that a paternity test had already been completed and that the results of that test indicated that he was the biological father of the child. R.A.R. later amended his petition to request that the trial court enter an order changing the child's last name to his name.
On October 6, 2005, T.L.H., the child's mother, answered and counterclaimed, alleging that R.A.R. was the biological father of the child but that she had been married to J.A.H. at the time of conception. T.L.H. (hereinafter referred to as "the mother") requested, among other things, that the trial court make J.A.H. a party to the litigation, grant her full custody of the child, and award her child support from R.A.R. The mother later amended her counterclaim to request an award of retroactive child support to the date of the child's birth on March 18, 2004. On November 10, 2005, the trial court ordered that J.A.H. be made a party to the case; J.A.H. answered and waived any claim he had as the legal father of the child.
On November 17, 2005, the trial court entered an order finding R.A.R. to be the biological father of the child. The trial court entered a pendente lite order requiring R.A.R. (hereinafter referred to as "the father") to pay child support in the amount of $1,250 per month and awarding the father supervised visitation with the child. Following a two-day ore tenus hearing, the trial court entered a judgment on April 27, 2006, in which it awarded primary physical custody of the child to the mother and awarded the father unsupervised visitation with the child. The trial court ordered the father to pay the mother $1,500 per month in child support, to pay the `outstanding medical bills associated with the birth of the child, and to pay $8,925 of the mother's attorney's fees. The trial court further ordered that the child's last name be changed to that of the father.
On May 9, 2006, the mother filed a motion to alter, amend, or vacate the judgment, requesting, among other things, that the trial court reconsider provisions of its visitation award and its child-support award. Because the father's liability for the outstanding medical bills associated with the birth of the child was the subject of a separate action filed by the mother, the mother also challenged that part of the trial court's April 27, 2006, judgment ordering the father to pay the outstanding medical bills associated with the birth of the child. On May 22, 2006, the parties filed, pursuant to Rule 59.1, Ala. R. Civ. P., a joint agreement for an extension of time to give the trial court an additional 14 days to consider the mother's postjudgment motion. On June 5, 2006, the trial court entered an order amending its April 27, 2006, judgment, in pertinent part, to provide for the reimbursement of the mother's health-care expenses related to the birth of the child in addition to the payment of any outstanding medical expenses associated with the birth of the child. On June 19, 2006, the mother timely appealed.
At the outset, we note that when a trial court receives ore tenus evidence, *486 its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App. 1995). This "presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor." Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000).
The mother raises six issues on appeal: (1) whether the trial court acted outside its jurisdiction by granting the father's request to change the child's last name; (2) whether the trial court erred in failing to order the father to pay child support retroactive to the date of the child's birth; (3) whether the trial court's award of child support was sufficient; (4) whether the trial court erred in ordering the father to reimburse the mother for medical expenses related to the birth of the child when it was not requested to do so; (5) whether the trial court erred by ordering the father to pay only a portion of the mother's attorney's fees; (6) whether the trial court abused its discretion by granting the father overnight visitation with the child and allowing the father to pick up the child for visitation and to return the child from visitation at the mother's home. We address each of the issues raised by the mother in turn.
The mother first contends that the trial court did not have subject-matter jurisdiction to order the change of the child's last name. Section 26-11-3(a), Ala.Code 1975, sets forth the procedure by which a father may petition to change the name of a child. That section provides:
"The father may petition at the time of filing the declaration of legitimation or at any time subsequent to the determination of legitimation to change the name of such child, stating in his declaration the name it is then known by and the name he wishes it afterwards to have. Such petition shall be filed in the office of the judge of probate of the father's residence or the child's residence."
The mother relies on this court's decision in Clark v. Clark, 682 So.2d 1051 (Ala.Civ.App.1996), in support of her position on appeal. In Clark, the mother petitioned the juvenile court to have her daughter's surname changed to the mother's maiden name; the juvenile court entered an order purporting to change the child's surname. Five years later, the father petitioned the circuit court to change his daughter's surname back to his own. The circuit court purported to grant the father's petition, and the mother appealed.
On appeal, the mother in Clark, relying on § 26-11-3, Ala.Code 1975, argued that the circuit court was without jurisdiction to grant the father's petition to change the daughter's surname. This court held that both the juvenile court and the circuit court had lacked subject-matter jurisdiction to enter a judgment changing a child's surname. In so holding, we determined that § 26-11-3 did not apply because that statute dealt only with the father's right to petition the probate court for a name change after there had been a declaration of legitimation. 682 So.2d at 1051. Further, this court recognized that no Alabama statute or caselaw existed that gave either the juvenile court or the circuit court the authority to change the child's name under the particular facts presented in Clark. 682 So.2d at 1051.
*487 Our review of Alabama law since this court issued its decision in Clark reveals no new statute or caselaw giving the trial court in this case jurisdiction to change the child's surname. Section 26-11-3 provides a method by which the father can petition the probate court to change the child's name. A probate court has original and general jurisdiction over the "change of the name of any person residing in their county." § 12-13-1(b)(10), Ala.Code 1975. The juvenile court is without authority to change a child's name. See § 12-15-30 et seq., Ala.Code 1975 (listing proceedings over which the juvenile court has exclusive original jurisdiction).
"`A judgment is void if the court that rendered it lacked jurisdiction over the subject matter or over the parties.'" Clark, 682 So.2d at 1052 (quoting Bieber v. Bieber, 623 So.2d 1163, 1165 (Ala.Civ.App. 1992)). Because the trial court was without jurisdiction to change the child's surname, that portion of the trial court's judgment is void. Therefore, we dismiss the appeal as to this issue. See Jenkins v. Covington, 939 So.2d 31 (Ala.Civ.App. 2006)(a void judgment will not support an appeal).
The mother also contends that the trial court erred by failing to order the father to pay child support retroactive to the date of the child's birth. The record reveals that the child was born on March 18, 2004. The father testified that he began sending the mother cash for child support in May 2004. The father testified that he had mailed the mother a total of $1,500 in cash for child support; the mother testified that the father had given her $2,300 in cash for child support. At some point, the father, through his attorney at the time, mailed the mother a check for $3,000 for child support. However, counsel for the mother returned the check to the father out of an apparent concern that the acceptance of the $3,000 in child support would compromise the mother's position in a civil action brought by her against the father in March 2005. We explain the nature of that separate action later in this opinion. The record does not contain a copy of the check or of any correspondence relating to that check. In July 2005, the father, who was then represented by new counsel, mailed the mother a second check for child support in the amount of $5,500. In a letter mailed with the check and submitted into evidence at trial, counsel for the father noted that the father requested the delivery of the funds as payment for child support, "which may have accrued in the past or may accrue in the future." The mother returned the check and by a letter dated August 9, 2005, stated that the check was "not acceptable" and explained the return of the check as a "precautionary measure . . . in the event that [the father] attempt[s] to raise some accord and satisfaction defense" in the separate civil action brought by the mother. The father testified that he consistently paid monthly child support after being ordered to do so by the trial court in a November 17, 2005, pendente lite order requiring the father to pay $1,250 in monthly child support.
In Brown v. Brown, 719 So.2d 228 (Ala. Civ.App.1998), citing the state's general law and policy requiring a parent to support a minor child, this court held
"that a trial court may, in its discretion, award child support retroactive to the filing of a complaint for divorce where the trial court has failed to enter a pendente lite child support order for the period in which the parent had a duty to support the child but failed to provide that support."
719 So.2d at 232. The Alabama legislature recognized a parent's duty to support a child by creating a cause of action for *488 retroactive support. See § 30-3-110 et seq., Ala.Code 1975.
In K.H.L. v. K.G.M., 782 So.2d 804 (Ala. Civ.App.2000), K.H.L., on behalf of her minor child, filed a complaint against K.G.M., seeking, among other things, an adjudication of paternity and an award of child support. The results of a paternity test ordered by the trial court revealed that K.G.M. was the child's father. The mother amended her complaint to seek retroactive child support. Evidence presented at an ore tenus hearing before the trial court revealed that the father had voluntarily paid the mother $500 in child support since the child's birth and that the father had begun paying $900 per month in child support in January 1999. The trial court did not award retroactive child support and the mother appealed. On appeal, the mother challenged the trial court's failure to award retroactive child support. Based on the discretion afforded a trial court to award retroactive child support and the evidence indicating that the father had voluntarily paid some child support, this court held that the trial court did not err in failing to award retroactive support. K.H.L. v. K.G.M., 782 So.2d at 807-08.
In this case, the father began sending the mother child support in May 2004, shortly after the child was born but before the child's paternity had been established. At some point, presumably after the mother had filed a separate civil action against the father in March 2005, the father mailed the mother a check for $3,000 for child support; the mother returned that check. The father made a second attempt to send the mother child support in July 2005, but that check was also returned to him. The father consistently paid child support following the trial court's November 2005 pendente lite order in which the trial court found him to be the father of the child and ordered him to pay child support. Given the evidence presented to the trial court and the discretion afforded the trial court, we cannot say that the trial court erred in failing to award retroactive child support.
The mother further contends that the trial court erred by only awarding her $1,500 per month in child support. Specifically, the mother argues that the trial court's award was insufficient given her ability to earn, the father's ability to earn, and the needs of the child. The evidence presented at trial revealed that the mother suffers from interstitial cystitis, fibromyalgia, chronic fatigue syndrome, and depression. The mother has not been employed since 1996. The record indicates that, when she was employed, the mother worked as a hairstylist. The mother testified that she could no longer work because she could not perform any kind of "repetitive work." The mother receives Social Security disability benefits in the amount of $703 per month; that amount includes $108 in benefits for the child. In addition to her disability income, the mother also receives monetary support from her father. The mother testified that her father had provided her with financial support for two years and seven months. The mother testified that she received monthly support from her father in the amount of $2,500 before the trial court ordered the father to pay pendente lite child support. The mother testified that she now receives only $1,250 a month from her father. The mother estimated that she owed her father $50,000 at the time of the final hearing in this matter. According to the mother, she would not be able to pay her monthly expenses without her father's help.
The mother estimated her monthly expenses to be $3,983.25. The mother submitted a detailed list of her monthly expenses as an exhibit at trial. Among the *489 mother's listed monthly expenses were a $1,361.44 mortgage payment, $360.50 for utilities, $145.52 for telephone service, $129.98 for cable service, $100 for yard care, and $217 for "household help." The mother also listed monthly expenses for her automobile, including $152.90 for insurance, $290 for "gas and oil," and $149.50 representing costs associated with repair and maintenance as well as parking. The mother estimated her monthly food expenses to be $620. The mother also listed monthly credit-card payments in the amount of $598. The mother explained at the final hearing that she had divided the amounts listed above by two when determining her monthly expenses for the child.
In addition to those expenses she divided equally, the mother included in her list $433 in expenses for the child that included the cost of clothes, diapers, and preschool for the child. The mother also listed a payment of $299 a month on $12,000 in general debt.
The father is employed as an attorney. The father testified that his yearly compensation fluctuates. Income-tax returns admitted into evidence for the years 2003, 2004, and 2005 revealed that the father had reported an adjusted gross income of $232,671, $138,909, and $213,840, respectively, for those years. The father testified that, at the time of the final hearing in April 2006, he had earned $27,280 between January 2006 and April 2006.
Before the final hearing, the father and the mother filed CS-41 child-support income affidavits. In his CS-41 affidavit, the father listed his gross monthly income as $12,583 and noted that he paid $481 a month for health-insurance coverage for the benefit, of the child. The mother listed her gross monthly income as $709 in her CS-41 affidavit and noted that the child was covered by Medicaid.
The father's gross monthly income of $12,583 exceeds the uppermost level of the child-support tables found in Rule 32, Ala. R. Jud. Admin. When the parties' combined income exceeds the maximum set forth in those child-support tables, the establishment of a parent's child-support obligation is within the trial court's sound discretion. Rule 32(c)(1), Ala. R. Jud. Admin.; Dyas v. Dyas, 683 So.2d 971 (Ala. Civ.App.1995), aff'd and remanded, 683 So.2d 974 (Ala.1996); and Garrett v. Garrett, 637 So.2d 1376 (Ala.Civ.App.1994). However, "a trial court's discretion is not unbridled and . . . the amount of child support awarded must relate to the reasonable and necessary needs of the children as well as to the ability of the obligor to pay for those needs." Dyas v. Dyas, 683 So.2d at 973.
In this case, the father's ability to pay is not at issue; instead, the issue is whether the amount awarded by the trial court related to the reasonable and necessary needs of the child. "[C]hild support is for the benefit of the [child] and not for the benefit of the custodial parent." Burkett v. Gresham, 888 So.2d 505, 509 (Ala. Civ.App.2004). Although the father's child-support obligation is less than half the total of the monthly expenses the mother listed at trial, upon closer review of the monthly expenses listed by the mother at trial, we cannot say that the trial court erred in its award of $1,500 a month for child support.
The trial court was presented with evidence from which it could have determined that the mother's medical condition did not render her a complete invalid. The evidence presented at the final hearing revealed that the mother had sought Social Security disability benefits before she had the child. The mother testified at length regarding her position as the child's primary caregiver and her ability to take care *490 of her two-year-old child. The mother explained her daily routine caring for the child, which included activities requiring the mother to physically exert herself.
Our review of the monthly expenses listed by the mother reveals that the mother attributed half the costs associated with yard maintenance, the maintenance of her vehicle, including costs associated with parking and the tag for the vehicle, and "household help" to the child. The trial court could have determined that those expenses were inappropriately attributed to the child or that those expenses were neither reasonable nor necessary. It is within the trial court's discretion to make such a determination. See Dyas v. Dyas, supra. That discretion is based, in part, on the trial court's unique position to directly observe the witnesses and to assess their demeanor and credibility. See Littleton v. Littleton, supra. We cannot say that the trial court abused its discretion, and, therefore, we affirm as to this issue.
The mother also argues that the trial court erred by ordering the father to reimburse her for medical expenses related to the birth of the child and to pay all outstanding medical expenses related to the birth of the child when she did not seek such relief at trial but, instead, specifically requested that relief in a separate civil action pending before the trial court.
Rule 15(b), Ala. R. Civ. P., states, in pertinent part:
"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence. . . . The Court is to be liberal in granting permission to amend when justice so requires."
"The determination of whether an issue has been tried by the express or implied consent of the parties within the meaning of Rule 15(b), Ala. R. Civ. P., is a matter that lies within the discretion of the trial court." Hathcock v. Hathcock, 685 So.2d 736, 738 (Ala.Civ.App.1996) (citing McCollum v. Reeves, 521 So.2d 13 (Ala. 1987)). The trial court's determination will not be reversed on appeal absent an abuse of that discretion. Id.
"`"[I]f Rule 15 is to be of any benefit to the bench, bar, and the public, the trial judges must be given discretion to allow or refuse amendments. . . . We state also that Rule 15 must be liberally construed by the trial judges. But, that liberality does not include a situation where the trial on the issues will be unduly delayed or the opposing party unduly prejudiced."'"
Tounzen v. Southern United Fire Ins. Co., 701 So.2d 1148, 1150 (Ala.Civ.App.1997), quoting Hayes v. Payne, 523 So.2d 333, 334 (Ala.1987), quoting in turn Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975).
*491 The record reveals that the mother filed a complaint against the father, among others, on March 3, 2005, seeking relief under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala.Code 1975, based on claims of, among other things, negligence, wrongful pregnancy, breach of a fiduciary duty, battery, and false imprisonment. In her March 3, 2005, complaint in the separate action, the mother sought, among other things, compensatory damages for medical expenses related to her pregnancy and punitive damages. After the father filed his petition to establish paternity and for custody of the child in the instant case, the mother counterclaimed, but she did not seek compensation for medical expenses incurred as a result of the pregnancy or for outstanding medical expenses associated with the birth of the child. The mother's separate action against the father was still pending at the time of the final hearing in this matter.
Our review of the record reveals that the issue of payment of the medical expenses associated with the child's birth Was not tried by the express or implied consent of the parties.
The mother objected when counsel for the father first raised the issue of money owed as a result of the child's birth. Further, as the mother asserted in her post-judgment motion, no evidence was presented at trial regarding the amount of money the mother paid for expenses associated with the birth of the child or the amount of money the mother owed following the birth of the child.
According to Rule 15, it is incumbent on the objecting party to show that the evidence would in some way prejudice the party. The mother has demonstrated that she was prejudiced when the trial court amended the pleadings to include a claim for previously incurred and outstanding medical expenses associated with the birth of the child when no evidence was presented at trial relating to those expenses. We conclude that the mother was unduly prejudiced by the trial court's decision to amend the pleadings and that the trial court abused its discretion in doing so. Therefore, that portion of the trial court's judgment pertaining to the reimbursement of expenses associated with the birth of the child and the mother's medical care during her pregnancy is due to be reversed.
The mother also challenges the adequacy of the trial court's award of $8,925 in attorney's fees in her favor. An "award of an attorney fee is within the sound discretion of the trial court and will not be reversed except for an abuse of discretion." G.K.M. v. E.B.M., 728 So.2d 1102, 1104 (Ala.Civ.App. 1998). "The trial court is given much discretion in determining an appropriate award of attorney fees because of its `own knowledge and experience as to the value of the legal services performed.'" Creel v. Creel, 871 So.2d 827, 830 (Ala.Civ.App.2002)(quoting Hammond v. Hammond, 500 So.2d 27, 29 (Ala. Civ.App.1986)).
The attorney for the mother represents on appeal that he devoted 103 hours of time to this case. However, the attorney testified during cross-examination at the final hearing that he believed that he had spent only approximately 80 to 82 of the 103 hours on the paternity action after the father had filed his petition to establish paternity in July 2005. The attorney did not present any evidence regarding the amount he charged the mother hourly for his representation. The attorney estimated his expenses on the case to be in the amount of $1,425. Given the deference afforded to a trial court's judgment awarding attorney's fees, we cannot say that the trial court abused its discretion in its *492 award of $8,925 in attorney's fees to the mother.
The mother further challenges that trial court's visitation award. Specifically, the mother contends that the trial court abused its discretion by granting the father overnight visitation with the child.
"The issue of child visitation is within the sound discretion of the trial court. Wyatt v. Wyatt, 549 So.2d 1351 (Ala.Civ. App.1989). When the issue of visitation is determined after oral proceedings, the trial court's determination of the issue will not be disturbed absent an abuse of discretion or a showing that it is plainly in error. Andrews v. Andrews, 520 So.2d 512 (Ala.Civ.App.1987). The trial court's primary consideration in establishing visitation rights for the noncustodial parent must be the best interests and welfare of the child. Jackson v. Jackson, 520 So.2d 530 (Ala.Civ.App. 1988)."
Dominick v. Dominick, 622 So.2d 402, 403 (Ala.Civ.App.1993).
The evidence presented at trial revealed that the father had been married to his wife for almost 12 years at the time of the final hearing in this matter. The father and his wife have two children, ages 11 and 7. The father also has two children from a previous marriage, ages 22 and 19, both of whom live in the father's home. The father's wife is supportive of the father's relationship with the child. She testified that the father's other children look forward to visiting with the child.
After the trial court awarded the father supervised visitation with the child in November 2005, the father consistently exercised visitation with the child. Sharon Cash, an employee of the Etowah County Department of Human Resources who was appointed by the trial court to supervise the father's visitation with the child, testified that she observed visitation between the father and the child alone and visitation between the father, the father's family, and the child. According to Cash, the father visited alone with the child during the first three visitations and later visitations occurred at the father's home. Cash testified that she had visited the father's home and found it to be appropriate for the child. Cash explained that the father was attentive to the child and the child's needs during visitations. Cash testified that she had no concerns about the child's safety while in the father's custody.
On cross-examination, Cash expressed concern regarding allowing the child to visit the father overnight. Cash testified that because the child was two years old at the time of the hearing, the child should spend the night with her primary caregiver, i.e., the mother. Cash testified that the child was too young to be away from her mother overnight and suggested that overnight visitation would be acceptable when the child reached the age of three or four.
The mother alleges, as her sole basis for error regarding the trial court's award of visitation, that the trial court abused its discretion by overlooking Cash's recommendation that there should be no overnight visitation until the child reached the age of three or four. However, the trial court was not limited to Cash's recommendation on cross-examination but was free to consider Cash's earlier testimony regarding the father's visitation with the child and the adequacy of the father's home. Although Cash did discourage overnight visitation for the child at two years of age, her testimony also revealed that the father had an improved relationship with the child and that the father's home was appropriate for the child.
The trial court also heard testimony from the father and his wife regarding their home life and their ability to care for *493 the child should the child be permitted to visit overnight. The trial court acted within it discretion when it awarded the father overnight visitation with the child. See Dominick, supra. Therefore, we affirm as to this issue.
The mother also challenges that portion of the trial court's judgment ordering the father to pick up the child from, and to return the child to, the mother's home when exercising visitation with the child. However, the mother admits on appeal that this issue alone does not warrant reversal. Furthermore, the mother cites no caselaw in support of this argument on appeal. See McLemore v. Fleming, 604 So.2d 353 (Ala.1992)(recognizing that it is not the function of an appellate court to conduct an appellant's legal research). Therefore, we affirm as to this issue.
APPLICATIONS OVERRULED; OPINION OF MARCH 2, 2007, WITHDRAWN; OPINION SUBSTITUTED; APPEAL DISMISSED IN PART; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in part and dissents in part, with writing, which MOORE, J., joins.
BRYAN, Judge, concurring in part, and dissenting in part.
I concur in overruling the mother's application for rehearing; however, because I would grant the father's application for rehearing, I dissent from overruling his application. I respectfully dissent insofar as the majority reverses the portion of the trial court's judgment ordering the father to reimburse the mother for medical expenses related to the birth of the child and to pay all outstanding medical expenses related to the birth of the child.
I cannot concur with the majority's conclusion that the mother demonstrated prejudice, based on a lack of evidence as to this issue, when the trial court ordered the father to reimburse or pay all of the aforementioned medical expenses. Furthermore, the mother failed to move the trial court for a continuance to enable her to produce evidence on this issue, as provided by Rule 15(b), Ala. R. Civ. P., despite the mother's testimony that she had given medical bills relating to the child's birth to her attorney.
In all other respects, I concur with the main opinion.
MOORE, J., concurs.